IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

FILED

2014 MAR 27 A 10: 39

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

LEONCIO PAZ, )
　)
　Plaintiff, )
　)
v. )
　) Civ. No: 1:14CV323-TSE-TCB
MIDLAND FUNDING, LLC, )
　Serve: Corporation Service Company, R/A )
　　Bank of America Center, 16th Fl. )
　　1111 East Main St. )
　　Richmond, VA 23219 )
　)
　Defendant. )
　)

## COMPLAINT

### Preliminary Statement

1. Plaintiff Leoncio Paz sues defendant Midland Funding, LLC for violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* Jurisdiction over plaintiff's claim lies in this court pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). Venue is proper in this court as all of the actions and omissions complained of herein took place in Fairfax County.

### Parties and Non-Party Entities

2. Plaintiff Leoncio Paz is an adult resident of Fairfax County. He is a consumer within the meaning of the FDCPA.

3. Defendant Midland Funding, LLC is a Delaware limited liability company with its principal place of business in San Diego, California. Midland Funding, LLC is a debt

1

collector within the meaning of the FDCPA because it uses the mails in a business which regularly collects and attempts to collect debts owed or due to another.

4. Dominion Law Associates, PLLC ("DLA"), not a party to this action, is a law firm located in Virginia Beach, Virginia. DLA represents Midland Funding in most of Midland Funding's collection lawsuits in the Fairfax General District Court, including but not limited to representing Midland Funding on the Warrant in Debt at issue in this case in which Midland Funding sued Mr. Paz. DLA is not a party to this case.

## FACTS

*Midland Funding, LLC's business practice and its practice of litigation before the Fairfax County General District Court*

5. Midland Funding, LLC ("Midland Funding") is in the business of, *inter alia*, buying lists of defaulted credit card debts from original creditors for substantially less than the full amount owed, and then suing the cardholders for the full amount owed. Midland Funding's website describes it as "one of the nation's biggest buyers of unpaid debt."

6. Midland Funding is a subsidiary of the Encore Capital Group, Inc., which, according to its most recent 10-K filing at p.47, invested $1.2 billion in 2013 to acquire portfolios, primarily charged-off credit card portfolios, with face values totaling $84.9 billion, for an average purchase price of 1.4 cents on the dollar.

7. Midland Credit Management, LLC ("MCM") is an affiliate of Midland Funding, and also a subsidiary of the Encore Capital Group, Inc. MCM services some or all of the charged-off accounts owned by Midland Funding, including the account at issue in this case.

8. For many of the charged-off accounts that Midland Funding purchases, Midland Funding desires to convert the consumer debts into judgments against the consumers. This is

because (a) Virginia law allows a judgment creditor 10 years to collect on a judgment; (b) a judgment creditor may garnish a judgment debtor's bank account or wages during that entire 10-year period until the judgment is satisfied, whereas a creditor may not garnish a bank account or wages to collect on a consumer debt that has not been converted into a judgment; (c) by operation of Virginia law, judgments automatically collect post-judgment interest at 6 percent, even if interest would not otherwise be available under the underlying contract or cause of action; and (d) Virginia has among the lowest garnishment exemptions of any state in the United States.

9. In order to convert the charged-off credit card debts that Midland Funding purchases into judgments, Midland Funding files hundreds upon hundreds of debt collection lawsuits per year against consumers in the Fairfax County General District Court.[1] During the twelve months prior to the filing of this Complaint, Midland Funding filed most of these lawsuits through its attorneys DLA.

10. Midland Funding and DLA know from ample experience that for the majority of debt collection lawsuits that Midland Funding files in the Fairfax County General District Court, the defendant will not appear in court to contest the lawsuit, and that Midland Funding, through its attorneys DLA, will seek a default judgment.

11. For this reason, when Midland Funding and DLA file a debt collection lawsuit (known as a Warrant in Debt) in the Fairfax County General District Court, they attach documentation – including but not limited to an affidavit executed by an MCM employee on behalf of Midland Funding – which documentation Midland Funding and DLA intend to be sufficient to allow them to obtain a default judgment against the defendant. These affidavits are

---

[1] Midland Funding's practices described in this Complaint are not unique to Fairfax County or the Fairfax County General District Court, but this lawsuit pertains only to Midland Funding's practices in the Fairfax County General District Court.

not custom-drafted for each Warrant in Debt, but rather are a template affidavit with data automatically filled in by a computer system.

12. At the time of filing their Warrants in Debt in the Fairfax County General District Court, Midland Funding and DLA do not know on which Warrants in Debt they will seek a default judgment, but they know that on each particular Warrant in Debt they file, they are more likely than not to seek a default judgment.

13. Midland Funding and DLA know that each time they seek a default judgment in the Fairfax County General District Court, a General District Court judge will review the Warrant in Debt and all documents attached thereto, and determine whether the documents suffice in order to award Midland Funding a default judgment against the consumer who failed to appear. Midland Funding and DLA know that, in making this determination, the judge will accept as true the facts stated in the affidavit that they provide to the court.

14. Midland Funding and DLA know that, in order to obtain a default judgment against a consumer in the Fairfax County General District Court, they must satisfy the judge, *inter alia*, that (a) Midland Funding actually owns the debt on which it seeks to collect; and (b) the amount that Midland Funding is claiming in damages (the dollar amount of judgment sought) is correct.

15. The affidavits prepared by MCM and filed by Midland Funding in pursuit of default judgments against consumers have not been without controversy. As a federal court in the Northern District of Ohio found in 2009:

> Midland receives and fulfills about 200 to 400 requests for affidavits per day. Ivan Jimenez, one of Midland's ten "specialists" in the department that supports law firms, personally signs between 200 and 400 of such affidavits per day. He finds the stack on a printer, signs them, and sends them by internal mail to the notary. Mr. Jimenez has the ability to check the accuracy of the information on the

affidavit via the computer system and he does, but the percentage of those that are checked for accuracy is "very few and far between."

*Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961, 966-67 (N.D. Ohio 2009). The *Brent* court went on to find that Midland Funding's affiant made a "patently false claim[]" in swearing under oath that he "had any personal knowledge regarding [the debtor's] debt[.]" *Id.* at 968.

16. As a result of the *Brent* case and other similar cases, Midland Funding changed the wording of its template affidavit. Midland Funding contends that these changes solved the problem identified by the *Brent* court of MCM employees robo-signing affidavits without actually first verifying the information contained therein. *See, e.g.*, Encore Capital Group/MCM, "Consumer Bill of Rights," at p.6 ("Prior to signing affidavits, our authorized representatives will read, understand, and fully verify document contents as appropriate to ensure accuracy."), *available at* http://www.midlandcreditonline.com/wp-content/uploads/2013/08/Consumer-Bill-of-Rights.pdf.

17. The legal validity of Midland Funding's template affidavit – and the credence that judges give the facts asserted therein – is the lynchpin of Midland Funding's entire litigation strategy before the Fairfax County General District Court of obtaining default judgments against consumers. This is because Midland Funding rarely or never actually intends to try a case before that court. Rather, Midland Funding intends to obtain a default judgment (or a settlement with the consumer) where possible, and where not possible, it intends to abandon its litigation efforts.

18. On information and belief, in the Fairfax County General District Court in twelve months prior to the filing of this Complaint, notwithstanding the fact that Midland Funding filed hundreds upon hundreds of debt collection lawsuits, Midland Funding tried zero cases against consumers who were represented by attorneys. To the contrary, excluding cases that were

settled, in 100% of all such cases in which the consumer retained counsel who actively defended the case, Midland Funding nonsuited its case against that consumer, rather than trying the case.[2]

19. If the judges of the Fairfax County General District Court were to have determined that Midland Funding's template affidavit lacked legal validity or was false, Midland Funding would not have been able to obtain any judgments at all in that court, during the twelve months prior to the filing of this Complaint.

### *Plaintiff Leoncio Paz's alleged debt at issue in this case*

20. Leoncio Paz took out a JCPenney credit card from GE Money Bank in about 2005. He used this card for personal, household or family purposes within the meaning of the FDCPA.

21. In 2011, Mr. Paz unexpectedly fell on hard times, and was unable to meet his financial obligations. On about March 23, 2011, Mr. Paz made the last payment on his JCPenney credit card. He defaulted on his obligation to pay the card on about April 23, 2011.

22. Some time about 180 days after April 23, 2011, GE Money Bank charged off the credit card.

23. Some time after the date of charge-off, Midland Funding alleges that it bought the credit card account at issue from GE Money Bank.

24. Some time thereafter, Midland Funding instructed its attorneys DLA to file a Warrant in Debt against Mr. Paz in the Fairfax County General District Court.

---

[2] For the purposes of this paragraph, to "try a case" means to put on testimony and evidence through direct and/or cross-examination of a witness or witnesses, and then submit the case to the judge for decision on the merits. To "actively defend a case" means to issue a subpoena duces tecum to the plaintiff, and/or to file a Grounds of Defense laying out legal defenses, and/or to appear at trial ready to defend the case.

25. Consistent with Midland Funding and DLA's general litigation practices described above, on September 27, 2013, Midland Funding, by its attorneys DLA, sued Leoncio Paz in the Fairfax County General District Court.

26. Midland Funding's debt collection lawsuit against Mr. Paz was one of 21 Warrants in Debt that Midland Funding filed against consumers in the Fairfax County General District Court on September 27, 2013. Of those 21 consumers, only Mr. Paz retained counsel.

27. Of the 20 other consumers whom Midland Funding sued on that date, four were returned as "not found" (i.e. the consumers were unable to be served with a copy of the Warrant in Debt, thus preventing Midland Funding from going forward with the lawsuits). Three were voluntarily dismissed by Midland Funding prior to trial for reasons unknown to plaintiff, but likely because the consumers, *pro se*, entered into a settlement agreement with Midland Funding and made payments on the settlement agreement. Midland Funding sought a default judgment in the other 13 cases.

28. Of the 13 above-mentioned cases in which Midland Funding sought a default judgment, a default judgment was granted in three cases, and was denied without prejudice in ten cases because the judge determined that Midland Funding had provided insufficient documentation regarding the debts.

29. A copy of the Warrant in Debt and all of the attachments thereto, that Midland Funding by its attorneys DLA filed against Mr. Paz, is attached hereto as Exhibit A, and its contents are expressly incorporated herein by reference.

30. Exhibit A includes the following documents:

    a. A Warrant in Debt seeking judgment in the amount of $5,216.58.

    b. A Soldiers and Sailors affidavit (not relevant here)

7

c. An affidavit, executed by MCM employee Serena Slatinsky on February 15, 2013, which states, inter alia,

> I have access to and have reviewed the records pertaining to the account and am authorized to make this affidavit on plaintiff's behalf. . . . MCM's records show that the defendant(s) owed a just and true balance of $5216.58. . . . If called to testify as a witness thereon, I could and would competently testify as to all the facts stated herein. I certify under penalty of perjury that the foregoing statements are true and correct.

d. A "Summary Screen," prepared by Midland Funding's attorneys DLA as agents for Midland Funding, which purports to show a "Claim Amt" of $5,216.58 and "Interest" of ".00," and also stating, "Lst Int 10/28/11 Rate .000%".

e. A credit card account statement from the original creditor GE Money Bank for the month of March 2011, which shows a total balance of $4,460.80, including the original creditor charging $68.96 in interest, representing 23.99 percent interest (expressed as an APR) on a balance of $3,384.45 for purchases prior to the date of 8/15/2010; and $27.07 in interest, representing 28.99 percent interest (expressed as an APR) on a balance of $1,099.21 for purchases subsequent to the date of 8/15/2010; for a total of $96.03 in interest charged by the original creditor on the March 2011 statement. The statement also stated that the total amount of interest charged in 2011 was "$265.80."

f. A Terms and Conditions statement, dated "7/05," which provides for an interest rate of 21.0% and a delinquency rate of 24.99%.

31. As the credit card account statement and Terms and Conditions statement make clear, the Slatinsky affidavit is false, deceptive, and/or misleading, for the following reasons:

    a. The affidavit claims, "MCM's records show that the defendant(s) owed a just and true balance of $5,216.58," whereas – at the time of filing the Warrant in Debt – Midland Funding and MCM possessed no original account documentation (*e.g.* credit card statements, Terms and Conditions statements) to support that claimed balance.

    b. The affidavit claims, "I have access to and have reviewed the records pertaining to the account," which is not true, as is evidenced by the fact that Midland Funding/MCM's records pertaining to the account do not support the request for damages in the amount of $5,216.58.

32. As the credit card account statement and Terms and Conditions statement make clear, the Summary Screen is false, deceptive, and/or misleading, for the following reasons:

    a. The Summary Screen claims a total balance of $5,216.58, whereas – at the time of filing the Warrant in Debt – Midland Funding/MCM possessed no original account documentation (*e.g.* credit card statements, Terms and Conditions statements) to support that claimed balance.

    b. The Summary Screen claims, or implies, or at the very least is reasonably susceptible to a reading, that ".00" of the total claim amount represents interest, whereas – at the time of filing the Warrant in Debt – Midland Funding possessed a record which made it entirely clear that at the very least, $265.80 of the total claim amount represented interest charged by the original creditor in January—March 2011.

33. Midland Funding's court filing in its case against Mr. Paz, read as a whole, is false, deceptive, and/or misleading, for the following reasons:

    a. It claims, or implies, or at the very least is reasonably susceptible to a reading, that the Terms and Conditions statement dated 7/05 applied to the account at issue at the time of charge-off of the account in 2011, which cannot possibly be true because the March 2011 statement shows interest rates that are different from those listed on the 7/05 Terms and Conditions statement.

    b. It claims, or implies, or at the very least is reasonably susceptible to a reading, that Midland Funding/MCM possessed admissible evidence sufficient to make out a *prima facie* case at trial that Mr. Paz owed it $5,216.58, whereas Midland Funding did not in fact possess such admissible evidence at the time of filing the Warrant in Debt.

    c. It claims, or implies, or at the very least is reasonably susceptible to a reading, that – were the consumer to appear in court and defend the case – Midland Funding intended to call Ms. Slatinsky or another MCM Legal Specialist as a witness at trial, when in fact Midland Funding specifically intended not to do so and knew that it would not do so.

34.    Mr. Paz, by counsel, appeared at the return date on the Warrant in Debt. The matter was set for trial on April 2, 2014, with Midland Funding by its attorneys DLA required to file a Bill of Particulars by January 22, 2014, and Mr. Paz being required to file a Grounds of Defense by February 26, 2014.

35.    On November 27, 2013, Mr. Paz's counsel then served Midland Funding with a subpoena duces tecum, requesting various documents pertaining to the account at issue and the assignment of the account from the original creditor to Midland Funding. Mr. Paz, by his

counsel, paid $12.00 to the Richmond City Sheriff's Office in order to have that subpoena duces tecum served on Midland Funding.

36. Rather than produce the requested documents, Midland Funding, by its attorneys DLA, nonsuited its case against Mr. Paz on January 21, 2014.

37. As of the date of Mr. Paz filing this Complaint, Midland Funding does not have a pending lawsuit against Mr. Paz, nor has Midland Funding obtained a judgment against him.

38. As of the date of filing this Complaint, Midland Funding still considers that Mr. Paz owes it at least $5,216.58.

39. Midland Funding's nonsuit of its debt collection lawsuit against Mr. Paz gives it the absolute right, under Virginia law, to re-file its lawsuit against him at any time on or before July 20, 2014.

### CAUSE OF ACTION:
### Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

40. At all times relevant to this action, Midland Funding, LLC was a debt collector within the meaning of the FDCPA because it uses the mails in a business which regularly collects and attempts to collect debts owed or due to another.

41. By means of its direct falsehoods and false implications set forth above, Midland Funding violated the Fair Debt Collections Practices Act, 15 U.S.C. §§ 1692e-1692f, to Mr. Paz's injury, and is thus liable to him in damages.

42. Midland Funding's noncompliance with the FDCPA was intentional within the meaning of 15 U.S.C. § 1692k, as Midland Funding intended to file the papers it filed as attachments to the Warrant in Debt against Mr. Paz, and intended to use those papers to obtain a default judgment against him in the amount of $5,216.58.

## Requested Relief

Wherefore, plaintiff Leoncio Paz respectfully requests that this court provide the following relief:

1. An award of plaintiff's actual damages, plus additional statutory damages of $1,000, pursuant to 15 U.S.C. § 1692k(a);

2. An award of plaintiff's costs and reasonable attorney's fees, as appropriate under the FDCPA, 15 U.S.C. § 1692k(a)(3); and

3. Such other and further relief as this court deems necessary and proper.

Plaintiff requests trial by jury.

Respectfully submitted,

LEGAL AID JUSTICE CENTER

By: _____  Date: 3/27/2014
Simon Y. Sandoval-Moshenberg (VSB No.: 77110)
6400 Arlington Blvd., Suite 600
Falls Church, Virginia 22042
Ph: (703) 778-3450 x 605
Fax: (703) 778-3454
simon@justice4all.org
*Counsel for plaintiff Leoncio Paz*